**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RANDY WILLIAMS,

                              Petitioner,

        -v-                                                  Civ. No. 9:03-CV-568
                                                                      (LEK/RFT)

GEORGE DUNCAN,

                              Respondent.

**APPEARANCES:**                              **OF COUNSEL:**

RANDY WILLIAMS
Petitioner, *pro se*
01-B-0247
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902

HON. ANDREW M. CUOMO                     MARIA MORAN, ESQ.
Attorney General for the State of New York     Assistant Attorney General
Attorney for Respondent
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204-2455

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

                **REPORT-RECOMMENDATION AND ORDER**[1]

        *Pro se* Petitioner Randy Williams was convicted of attempted murder in the second degree,

assault in the first degree, criminal possession of a weapon in the third degree, and criminal use of a

firearm in the first degree on October 27, 2000.  Dkt. No. 56, Am. Pet. at p. 2; Dkt. No. 61, Resp't

Answer, Ex. 2, Transcript of Trial of Randy Williams (10/27/00) ("Trial Tr.") at pp. 639-40.  Petitioner

---

        [1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

presently seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the following grounds: (1) Petitioner received ineffective assistance of trial counsel; (2) law enforcement authorities conspired to convict Petitioner through the use of false evidence; (3) the prosecutor engaged in misconduct during the course of his trial; (4) newly discovered evidence emerged after trial to exonerate him; (5) his rights under *Batson v. Kentucky*, 476 U.S. 79 (1986), were violated; and (6) trial counsel failed to discuss plea offers with him.[2]  Dkt. No. 56, Am. Pet.[3]  For the reasons that follow, this Court recommends that the Amended Petition be **denied**.

## I. BACKGROUND

According to the testimony adduced at trial, on the afternoon of March 23, 2000, Petitioner was sitting on the front porch of his house located at 148 Lilac Street in Syracuse, New York, along with Rausheen Cox, Raheem Dunaway, Wayne Williams, and his sister, Nicole Williams.  Trial Tr. at pp. 173-75 & 374.  Nicole Williams stated these individuals, including herself and Petitioner, were members of the "Bloods" gang.  *Id.* at pp. 455 & 485-86.  She further testified that her boyfriend, Raheem "Jaws" Dunaway, had plans to "rejump" Petitioner into the gang.  *Id.* at p. 486.[4]

---

[2] While Petitioner sets forth his grounds for relief in the above order, the Court will consider Petitioner's allegations out of succession for sake of clarity.

[3] Petitioner originally filed this action on May 8, 2003.  *See* Dkt. No. 1.  However, on April 15, 2004, we stayed this matter so that Petitioner could exhaust his state court remedies.  Dkt. No. 21.  Petitioner thereafter advised the Court he had exhausted his state court remedies, *see* Dkt. No. 38, and we lifted the stay by Order filed on December 13, 2005, *see* Dkt. No. 55.  At that time, we also granted Petitioner's Motion to Amend the Petition, and advised that the Amended Petition "shall supersede and replace *in toto* the original Petition filed herein[.]"  Dkt. No. 55 at p. 3 (emphasis in original).  Accordingly, the Court will consider herein only those grounds raised in Williams' Amended Petition and reiterated in his subsequently-filed Traverse.  *See* Dkt. Nos. 56 & 62.

[4] Detective Steven Stonecypher testified that Petitioner admitted he was an active member of the Bloods, but he was not recognized by the gang because the person who jumped him in had lost respect.  Trial Tr. at p. 357.  Petitioner acknowledged that Jaws planned to rejump him into the gang.  *Id.*  According to Detective Stonecypher, who had attended a seminar regarding the Bloods gang, to get "jumped" into the Bloods, an individual is required to find someone on the street and to assert power over him by inflicting an injury through shooting or slicing him.  *Id.* at p. 362.  However, according to Wayne Williams, an individual is required to fight and be beaten up by several people in order to get "jumped" into the Bloods.  *Id.* at pp. 386-87.

That afternoon, a group of people, including fifteen-year-old Larry McCraney and his cousin Charles Johnson, walked by the house and purportedly demonstrated signs of the "Crips" gang to the group on the porch. *Id.* at pp. 176-77 & 373. Rausheen Cox testified that Petitioner was angered and decided to go down to their block so they could "[s]ee how it feels, see how they like it." *Id.* at pp. 315-16. Wayne Williams testified that Petitioner stated he wanted to shoot "them niggers." *Id.* at pp. 375-76. Before Petitioner left the porch with Cox to follow the alleged Crips, Jaws handed Petitioner a gun. *Id.* at pp. 376-78. Petitioner wore a black hooded sweatshirt and black jeans, while Cox wore a blue hooded sweatshirt and blue jeans. *Id.* at pp. 317 & 376-78. Petitioner also wore boots, with a blue bandana tied around one boot. *Id.* at p. 91. Shortly thereafter, Petitioner and Cox met up with McCraney and Johnson at the corner of Park and John Streets. *Id.* at pp. 91 & 316-19. Cox testified that Petitioner told him to watch himself, and then reached into his black hooded sweatshirt to pull out the gun. *Id.* at pp. 316-19. Petitioner fired two shots at McCraney as Cox ran away from the scene. *Id.* at pp. 92 & 319-20. Eyewitnesses Beth Giangiobbe and Tyrone Knight observed two black males walking on Park Street, and saw the male dressed in black pull out an object and discharge it twice at a male walking toward him. *Id.* at pp. 139-40 & 147-48. In his pre-arrest statement to police, Petitioner denied any involvement in the shooting. *Id.* at p. 356.

Following the shooting, Petitioner returned to his house on Lilac Street, where Wayne Williams observed Petitioner in possession of the gun. *Id.* at pp. 376-78. Cox testified Petitioner informed him that, upon returning home, he handed the gun to his sister, Nicole. *Id.* at p. 322.[5] About fifteen minutes after the shooting, Petitioner arrived at a friend's home, no longer wearing the black hooded sweatshirt

---

[5] Nicole Williams disputed this testimony by stating that Cox handed the gun to Jaws after the shooting, and Jaws gave it to Nicole to conceal. Trial Tr. at pp. 458-62. Nicole hid the weapon in her mother's house at 148 Lilac Street. *Id.* at pp. 478-81.

and instead dressed in overalls and boots. *Id.* at pp. 321-23 & 379-80. Detective Eric Coe retrieved as evidence from Petitioner's house, *inter alia*, a black hooded sweatshirt, black denim jeans, a pair of boots with a blue bandana tied around the bottom, and a .22 caliber loaded revolver. *Id.* at pp. 231-32.[6]

Immediately following the shooting, McCraney informed Officer Thomas Murfitt that the shooter lived on Lilac Street, *id.* at pp. 44-45, and later told Officer William Foster that the shooter lived in the 100-block of Lilac Street, *id.* at p. 54. Officer Daniel Jones rode with McCraney to the hospital, and testified that when asked who shot him, McCraney repeated "Randy, [who] lives on Lilac." *Id.* at pp. 163-64. McCraney's mother also testified he informed her at the hospital "that punk ass bitch Randy shot me," and the shooting was gang-related. *Id.* at pp. 133-34. However, McCraney later provided sworn statements to the police wherein he stated he did not know who shot him and was unsure whether Dunaway or Cox was the shooter. *Id.* at pp. 96-97 & 102-10. In addition, while testifying before an Onondaga County grand jury, McCraney stated that Petitioner was not the shooter; rather, the masked individual accompanying petitioner shot him, and that individual was Raheem Dunaway. *Id.* at pp. 105-07. At trial, McCraney identified Petitioner as the shooter. *Id.* at pp. 92-96. During cross-examination, McCraney indicated that his prior inconsistent statements were made in an effort to obtain his boots, which were held by law enforcement as evidence, and to avoid going to court. *Id.* at pp. 97 & 105-10.

On May 25, 2000, Petitioner was indicted by an Onondaga County grand jury. *See* Dkt. No. 61, Resp't Answer, Ex. 4, Resp't App., Indictment No. 0512-1-2 (5/25/00) ("Indictment"), at pp. A9-11. In that accusatory instrument, Petitioner was charged with attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the third degree, and criminal use of a

---

[6] The Rohm .22 caliber revolver contained two spent casings, but lacked sufficient fingerprints to enable law enforcement to make a positive fingerprint identification. Trial Tr. at pp. 286-88.

firearm in the first degree.  Indictment at pp. A9-11.[7]

Beginning on October 23, 2000, Williams was tried before a jury as to the foregoing charges, with the Honorable Joseph E. Fahey, Onondaga County Court Judge, presiding.  At the conclusion of that trial, Williams was found guilty of all charges brought against him.  Trial Tr. at pp. 639-40.  On January 25, 2001, Petitioner was sentenced to concurrent determinate terms of fifteen (15) years imprisonment for the attempted murder and assault offenses, a concurrent determinate term of four (4) years imprisonment for the weapon possession charge, and a consecutive determinate term of five (5) years imprisonment for criminal use of a firearm.  Dkt. No. 61, Resp't Answer, Ex. 3, Sentencing Tr. & Am. Tr. ("Sentencing Tr.") at pp. 11-12.

Through counsel, Williams appealed his convictions and sentences to the New York State Supreme Court, Appellate Division, Fourth Department.  Dkt. No. 61, Resp't Answer, Ex. 5, Appellate Br. (9/27/01).[8]  That court modified the judgment of conviction by directing that all sentences run concurrently, and otherwise affirmed the convictions.  *People v. Williams*, 738 N.Y.S.2d 809 (N.Y. App. Div., 4th Dep't 2002).  The New York State Court of Appeals denied Petitioner leave to appeal on July 3, 2002.  *People v. Williams*, 776 N.E.2d 12 (N.Y. 2002); *see also* Dkt. 61, Ex. 16.[9]

On July 30, 2001, Williams filed a motion to vacate his judgment of conviction pursuant to New

---

[7] Raheem Dunaway also was indicted by the grand jury for criminal possession of a weapon in the third degree. Indictment at p. A9.  In addition, Rausheen Cox was originally charged along with Petitioner and Dunaway, but was no-billed by the grand jury.  Trial Tr. at pp. 328-29 & 339.

[8] Williams also filed a supplemental *pro se* appellate brief reiterating the arguments made by his counsel.  Dkt. No. 61, Resp't Answer, Ex. 7, Supplemental *Pro Se* Appellate Br. (11/21/01).  In addition, through counsel, Petitioner submitted a reply brief alleging that a *Batson* error deprived Petitioner of his constitutional rights under the Sixth and Fourteenth Amendments.  Dkt. No. 61, Resp't Answer, Ex. 9, Reply Br. (1/2/02).  The District Attorney filed a motion to strike the brief for improperly raising a new issue for the first time in a reply brief.  Dkt. No. 61, Resp't Answer, Ex. 10, Motion to Strike Reply Br.  (1/14/02).  The Fourth Department granted the People's motion to strike Williams' reply brief.  Dkt. No. 61, Resp't Answer, Ex. 11, Decision and Order (2/22/02).

[9] In addition, the Fourth Department denied Petitioner's motion for reargument and reconsideration on July 3, 2002. *People v. Williams*, 745 N.Y.S.2d 737 (N.Y. App. Div., 4th Dep't 2002).

York's Criminal Procedure Law ("CPL"), Section 440.10 ("July 2001 CPL Motion"). Dkt. No. 61, Ex. 17. That application was opposed by the District Attorney. Dkt. No. 61, Ex. 18. In a Decision and Order, dated April 11, 2002, Judge Fahey denied Williams' July 2001 CPL Motion in all respects. Dkt. No. 61, Ex. 19 ("July 2001 DO"). The Appellate Division, Fourth Department denied Petitioner's application for leave to appeal the July 2001 Decision and Order on October 7, 2002. Dkt. No. 61, Ex. 21.

On July 28, 2004, Williams filed a second motion to vacate his judgment of conviction pursuant to N.Y. CPL § 440.10 ("July 2004 CPL Motion"). Dkt. No. 61, Ex. 22. That application also was opposed by the District Attorney. Dkt. No. 61, Ex. 23. In a Decision and Order, dated November 30, 2004, Judge Fahey denied Williams' second CPL Motion in all respects. Dkt. No. 61, Ex. 24 ("July 2004 DO"). On May 18, 2005, the Appellate Division, Fourth Department denied Petitioner's application for leave to appeal the July 2004 Decision and Order. Dkt. No. 61, Ex. 27.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim unless the state courts adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a

6

State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)).

A state court determines a petitioner's federal claim "on the merits" and triggers the highly-deferential AEDPA standard of review when the state court (1) disposes of the claim on the merits and (2) reduces its disposition to judgment. *See Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). In this regard, it is not necessary for the state court to explicitly refer to the particular federal claim or to any federal case law. *See id.*

However, if a state court does not adjudicate a petitioner's federal claim "on the merits," the state court's decision is not entitled to AEDPA deference and instead, the federal *habeas* court must apply the pre-AEDPA standard of *de novo* review to the state court's disposition of the federal claim. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (citing *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001)).

## B. Unexhausted Claims

In the first ground of his Amended Petition, Williams contends for the first time that his trial counsel was ineffective by: (1) failing to call Charmine Burns as a defense witness to testify regarding the victim's identification of the shooter and (2) failing to object to the admission at trial of a starter pistol found at Petitioner's home. Am. Pet., Ground One. Respondent argues that these factual claims of ineffective assistance of counsel are unexhausted and procedurally defaulted, thereby not subject to federal *habeas* review. Resp't Mem. at pp. 13-16.

Prior to seeking federal *habeas* relief, a petitioner must fully exhaust any claim presented to the *habeas* court. *Aparicio v Artuz*, 269 F.3d at 89 (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42

F.3d 144, 147 (2d Cir. 1994). This exhaustion requirement is satisfied if a federal claim has been

"fairly presented" to the state courts. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting

*Picard v. Connor*, 404 U.S. 270, 275 (1971)). Where a petitioner raises an ineffective assistance of trial

counsel claim, each factual claim made in support must be fairly presented to a state court before a

federal *habeas* court can consider it. *Panezo v. Portuondo*, 2003 WL 23198781, at *10 (E.D.N.Y. Nov.

6, 2003) (citing *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991)). Petitioner never raised these

particular theories in support of his ineffective assistance claim either on direct appeal or in his two

CPL Motions.[10]

When a claim has not been fully exhausted in the state courts, a federal court may find that there

is an absence of available state corrective process under 28 U.S.C. § 2254(b) "if it is clear that the

unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum

would be futile." *Aparicio v. Artuz*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir.

1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (stating that a federal court may address the

merits of a *habeas* petition containing unexhausted claims where there is no further state proceeding

for petitioner to pursue or where further pursuit would be futile). Under these circumstances, the claim

would be "deemed exhausted." Further, if the federal court finds that the claim is procedurally barred

in state court, it is similarly procedurally barred in federal court. *Aparicio v. Artuz*, 269 F.3d at 90

(citing *Coleman v. Thompson*, 501 U.S. 722 (1991)).

Petitioner's claims of ineffective assistance of counsel could have been raised in his direct

---

[10] The Court notes that on direct appeal, Petitioner alleged defense counsel failed to object to the admission of "boots, jeans, numerous bandanas and hooded sweatshirts taken from the residence," but he made no mention of the starter pistol. Appellate Br. at p. 16. Further, in his CPL Motions, Petitioner objected to counsel's alleged failure to call numerous defense witnesses, however, Charmine Burns is not included amongst those proposed witnesses. July 2004 CPL Motion at pp. 18-21; July 2001 CPL Motion at p. 1.

appeal to the Appellate Division, Fourth Department, since these allegations are based upon matters which were in the trial court record. Petitioner cannot now file a second appeal with the Fourth Department as to these claims because a criminal defendant is "entitled to one (and only one) appeal" to the Appellate Division. N.Y. CRIM. PROC. LAW § 450.10(1); *see also Aparicio v. Artuz*, 269 F.3d at 91. Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," Petitioner cannot now properly raise these record-based claims in a third motion to vacate his judgment of conviction pursuant to CPL § 440.10. *Aparicio v. Artuz*, 269 F.3d at 91 (citing N.Y. CRIM. PROC. LAW § 440.10(2)(c)); *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). Accordingly, these claims, which Petitioner never asserted in the state courts, are deemed exhausted and procedurally defaulted.

Federal courts may only consider the substance of procedurally barred claims where the petitioner can establish both cause for the procedural bar and prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review. *See DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (asserting that federal review of procedurally barred claims is unavailable unless petitioner "can show cause for the default and actual prejudice resulting therefrom, or show that he is actually innocent") (internal quotations and citations omitted); *Dixon v. Miller*, 293 F.3d 74, 80-81 (2d Cir. 2002) (citations omitted); *Ramirez v. Attorney Gen. of the State of New York*, 280 F.3d 87, 94 (2d Cir. 2001); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000); *Ferguson v. Walker*, 2002 WL 31246533, at *2 (S.D.N.Y. Oct. 7, 2002) (citing *Fama*) (other citation omitted); *see generally Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

To establish "cause," a petitioner must show that some objective external factor impeded his ability to either comply with the relevant procedural rule or to fully exhaust his federal claims. *See*

*Coleman v. Thompson*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999) (discussing cause in context of petitioner's procedural default); *Doleo v. Reynolds*, 2002 WL 922260, at *3 (S.D.N.Y. May 7, 2002) (finding that petitioner must demonstrate cause for failure to exhaust claims). Examples of external factors include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. *Murray v. Carrier*, 477 U.S. at 488; *Bossett v. Walker*, 41 F.3d at 829 (citing *Murray*); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1993); *Lovacco v. Stinson*, 2004 WL 1373167, at *3 (E.D.N.Y. June 11, 2004) (citing *Murray*).[11]

Williams has not offered any cause for his failure to raise the procedurally defaulted claims referenced above in his direct appeal or his motions to vacate, and has never alleged, in either the state courts or this proceeding, that he received ineffective assistance of counsel because his appellate counsel failed to argue any of those claims on appeal.

Since Williams has not established cause for these unexhausted and procedurally defaulted claims, this Court need not decide whether he has suffered prejudice because federal *habeas* relief is unavailable as to procedurally barred claims unless *both* cause and prejudice are established absent proof that the failure to consider the merits of the procedurally barred claims would result in a fundamental miscarriage of justice.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *see also McLeod v. Moscicki*, 2003 WL 22427757, at * 7 (S.D.N.Y. Oct. 22, 2003) (citing *Murray v. Carrier*, 477 U.S. at 494); *You v. Bennett*, 2003 WL 21847008, at *3 (E.D.N.Y. July 29, 2003) (citing *Coleman v. Thompson*, 501 U.S. at 750); *Ayuso v. Artuz*, 2001 WL 246437, at *9 (S.D.N.Y. Mar. 7, 2001); *Pou v.*

---

[11] However, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman v. Thompson*, 501 U.S. at 752-53 (quoting *Murray v. Carrier*, 477 U.S. at 488).

*Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, D.J.).  Additionally, after reviewing the state court records, this Court finds no basis to conclude that the denial of Petitioner's procedurally barred claims would result in a fundamental miscarriage of justice, which has been interpreted as amounting to "an unjust incarceration."  *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000).  Significant evidence exists pointing to Petitioner's guilt, including witness identifications, inculpatory evidence found at Petitioner's home, as well as Petitioner's desire to get "rejumped" into the Bloods gang.  *See* Trial Tr. at pp. 92, 133-34, 163-64, 231-32, 316-19, 357, & 375-76.  Therefore, the Court recommends that the above-referenced ineffective assistance of counsel claims be **denied** as unexhausted and procedurally barred.

### C.  Procedurally Defaulted Claim

Considering next Ground Five of Williams' Amended Petition, Williams contends that the trial court improperly allowed the prosecution to remove two black jurors from the prospective jury panel in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).  Am. Pet., Ground Five.  Williams raised this issue for the first time in his reply brief on direct appeal to the Appellate Division, Fourth Department. Dkt. No. 61, Ex. 9.  That court granted Respondent's motion to strike the reply brief as improper.  Dkt. No. 61, Exs. 10-11.  In its decision rejecting Petitioner's direct appeal, the Fourth Department held that Petitioner's contention concerning a potential *Batson* violation "is raised for the first time in defendant's reply brief and therefore is not properly before us . . . .  In any event, that contention is unpreserved for our review because defendant failed to articulate to the court any reason why he believed that the prosecutor's explanations [for challenging the prospective juror] were pretextual." *People v. Williams*, 738 N.Y.S.2d at 810 (citations and quotations omitted).  Respondent argues that Petitioner's *Batson* allegation is unexhausted, procedurally defaulted, and lacks merit.  Resp't Br. at

pp. 24-28.

A federal court ordinarily will not review a federal claim presented in a *habeas* petition if it has been rejected by the state courts on a ground which is both "independent and adequate[.]" *Coleman v. Thompson*, 501 U.S. at 736; *Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006); *Brown v. Greiner*, 409 F.3d 523, 532 (2d Cir. 2005). For a federal court to deny *habeas* review based on the independent and adequate state ground doctrine, it must be clear that the state court actually relied upon a procedural bar as an independent basis for its disposition of the claim. *Fama v. Comm'r of Corr. Servs.*, 235 F.3d at 809.

The Second Circuit has determined that a petitioner's failure to challenge as pretextual a prosecutor's reasons for excusing potential jurors violates New York's contemporaneous objection rule articulated in CPL § 470.05(2),[12] and constitutes an independent and adequate state ground precluding federal *habeas* review. *See Rodriguez v. Schriver*, 392 F.3d 505, 509-10 (2d Cir. 2004); *see also Galarza v. Keane*, 252 F.3d 630, 638 (2d Cir. 2001) ("[A] party must raise his or her *Batson* challenges in a manner that would allow a trial court to remedy the problem at trial."); *Williams v. Donnelly*, 2005 WL 2290592, at *16 (E.D.N.Y. Apr. 12, 2005) (Mann, M.J.), *adopted*, No. 00-4445, Dkt. No. 26 (E.D.N.Y. Sept. 16, 2005) (Trager, D.J.). In *Rodriguez v. Schriver*, as in the present case, the petitioner timely raised a *Batson* objection, but failed to specifically challenge as pretextual the prosecutor's stated reasons for excusing three jurors. 392 F.3d at 509. The intermediate state appellate court in *Rodriguez* considered the petitioner's *Batson* claim "unpreserved for appellate review." *Id.* at 507

---

[12] CPL § 470.05(2) provides in relevant part:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered . . . at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

(quotations omitted).  The Second Circuit determined that the state court's holding clearly and unambiguously rested on an independent and adequate state procedural bar embodied by CPL § 470.05(2).  *Id.* at 511.  Accordingly, this Court finds Williams' *Batson* claim procedurally barred, and therefore unavailable for *habeas* review.

To overcome this procedural default, Williams must establish both cause and prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.  *See DiGuglielmo v. Smith*, 366 F.3d at 135.  Petitioner has attempted to establish cause for this procedural default by alleging his counsel was ineffective in failing to demonstrate pretext during the *Batson* inquiry.  *See* Am. Pet., Grounds One and Five.  However, as discussed *infra*, this Court finds that Petitioner's allegations of ineffective assistance of counsel in this regard should fail.  *See infra* Part II.E.1.b.  Even assuming *arguendo* that Petitioner's counsel was ineffective and Petitioner therefore has established cause for the default, Petitioner is unable to demonstrate any prejudice because his *Batson* claim lacks merit.  *Id.*[13]

In *Batson v. Kentucky*, the Supreme Court articulated a three-part test for trial courts to employ when evaluating whether a party exercised a peremptory challenge in violation of the Equal Protection Clause.  476 U.S. at 94-97; *see also Hernandez v. New York*, 500 U.S. 352, 358 (1991).  First, the party objecting to the peremptory challenge must make a *prima facie* showing that the potential juror was struck because of his or her race.  *Batson v. Kentucky*, 476 U.S. at 94-95; *see also Hernandez v. New York*, 500 U.S. at 358.  A *prima facie* case may be established by showing a pattern of strikes exercised against minority prospective jurors.  *Batson v. Kentucky*, 476 U.S. at 97.  Second, once a *prima facie*

---

[13] Petitioner has not argued ineffective assistance of appellate counsel as cause for his failure to properly raise *Batson* on direct appeal.  The Court therefore will not address this potential basis for cause.  In any event, even if such a basis for cause was established, Williams cannot demonstrate the requisite prejudice.

case is established, the proponent of the peremptory challenge must offer a race-neutral explanation for striking the potential juror. *Id.* Finally, the trial court must consider whether the moving party carried his burden of proving that the challenge was motivated by purposeful discrimination. *Id.* at 96.

During *voir dire*, the prosecution exercised a peremptory challenge to remove an African-American juror, Hurburt Brown. Jury Selection Tr. at p. 167. Petitioner's counsel observed that this strike was the prosecution's second as to an African-American juror, and he therefore asserted a general *Batson* challenge. *Id.* Judge Fahey asked Assistant District Attorney Michael Price ("ADA Price") to provide a racially neutral reason for removal of the juror, and he responded:

> Yes, Judge, the same answers he [Mr. Brown] gave as Mr. Scott as far as the people being let go based upon questions concerning D.N.A., and the Illinois government, I think that got way out of bounds and he expressed very liberal concerns, he's been a journalism professor for three years. I don't think I've set any pattern as far as excluding African-Americans. Mrs. Shabazz [the first African American juror excused] was the mother of a convicted drug dealer.

*Id*.

Defense counsel failed to object to the prosecution's rationale as pretextual. *Id.* Thereafter, Judge Fahey apparently accepted the prosecution's explanation as race-neutral and excused Mr. Brown. *Id.* at p. 168.

Upon raising the *Batson* objection, it was incumbent upon defense counsel to establish a *prima face Batson* violation. To make a *prima facie* showing, the moving party must demonstrate that: (1) "he is a member of a cognizable racial group," (2) "the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race," and (3) "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson v. Kentucky*, 476 U.S. at 96. All relevant circumstances should be considered, including whether the prosecutor engaged in a pattern of strikes, questions, or

statements during *voir dire* evincing discriminatory motives.  *Id.* at 96-98; *see also Edmonson v. Leesville Concrete Co, Inc.*, 500 U.S. 614, 631 (1991).  In making the *Batson* challenge, defense counsel asserted that the prosecution exercised challenges against two African-American panelists. Based on this statement referencing a "pattern" of strikes against African-American panelists, this Court will assume Petitioner established a *prima facie* case under *Batson*.

The trial court then reached the second step of the *Batson* inquiry by asking the prosecution to articulate a race-neutral explanation for the peremptory challenges.  This explanation need not be "persuasive, or even plausible," and unless "discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."  *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (quotations omitted).  First, ADA Price explained his reasons for striking Mr. Brown, and highlighted that he had stricken a non-African-American panelist, Jason Scott, for the same reason – their liberal views regarding violence in society.  Jury Selection Tr. at pp. 143-44, 152, & 168.[14]  When asked by defense counsel whether he believed disputes today are settled differently than in the past due to the prevalence of gangs, Mr. Scott, who was convicted of assault as a youthful offender, *see id.* at pp. 97-98, disagreed and stated in relevant part:

> No, I mean the way that you word it you make it sound like there's never been any violence over little disputes.  There's always been violence.  It just so happens that, I mean, some areas there is more violence over the same things and in other areas there wouldn't be.  I don't think there is too much more, you have the same people living here.

*Id.* at p. 143.

Mr. Brown, a journalism professor at Syracuse University, nodded his head in agreement, and stated:

> I tend to agree with what he is saying.  I tend to think the amount of what there is

---

[14] While Mr. Scott's race is not evident from the face of the record, it is clear to the Court that Mr. Scott was non-African American because defense counsel did not include Mr. Scott in his tally of *two* peremptory strikes exercised against black panelists Mr. Brown and Mrs. Shabazz.  Jury Selection Tr. at p. 167.

> violence right now, there are different means that people are using these days.  Some of it is probably a little more violent than in the past, but there have always been groups that separate themselves, that had common symbols, had common rituals, those kind of things. . . . I think there has been somewhat more prevalent behavior, certain types in this area, but if you went back to generations you'd see some awfully prevalent types of gang activity then, as well.

*Id*. at pp. 143-44.

Based on this exchange, this Court finds that ADA Price provided a legitimate, race-neutral explanation for his decision to excuse Mr. Brown in that Mr. Brown's views on violence could tend to make him biased and sympathetic toward Petitioner.  *See, e.g., People v. Dorsey*, 770 N.Y.S.2d 462, 463-64 (N.Y. App. Div., 3d Dep't 2004) (affirming trial court's rejection of *Batson* challenge where prosecution's explanation that the juror's answers reflected potential sympathy toward inmates was race-neutral and not pretextual).

   In addition, the prosecutor provided a reasonable explanation for excusing Dorothy Shabazz, another African-American juror.  That is, Mrs. Shabazz's son and grandson were prosecuted on drug charges by the Onondaga District Attorney's Office.  Jury Selection Tr. at pp. 31-33; *see also Copeland v. Walker*, 258 F. Supp. 2d 105, 126 (E.D.N.Y. 2003) (stating that record demonstrated "plausible, race-neutral reasons for the exercise of peremptory challenges" where one excused black jury had a "close" cousin previously convicted of crimes); *People v. Barney*, 743 N.Y.S.2d 793, 794 (N.Y. App. Div., 4th Dep't 2002) (finding that trial court properly considered prosecutor's explanation for excusing black female juror as race-neutral where she stated her son had been convicted of a crime twelve years earlier).  In fact, Mrs. Shabazz's son, Jeffrey Peterson, was serving his sentence in state prison at the time of *voir dire*.  *See People v. Peterson*, 703 N.Y.S.2d 629 (N.Y. App. Div., 4th Dep't 2000).

   The burden then shifted to Petitioner to rebut as pretextual the race-neutral reasons proffered by the prosecution.  In the absence of any further objection by defense counsel, Judge Fahey denied

Williams' *Batson* motion and excused Mr. Brown.  Jury Selection Tr. at p. 168.  Although Judge Fahey did not articulate his rationale, it is implicit in his rejection of Petitioner's motion that he had analyzed whether Petitioner shouldered his burden of proving purposeful discrimination under the third step of *Batson*.  This analysis requires the court to evaluate the credibility and demeanor of the attorney offering the race-neutral explanation for the strike.   *Hernandez v. New York*, 500 U.S. at 365.  Generally, the critical issue is whether counsel's race-neutral explanation is believed.  Given that "[t]he credibility of an attorney offering a race-neutral explanation is at the very heart of [the] analysis," *Barnes v. Anderson*, 202 F.3d 150, 157 (2d Cir. 1999), the reviewing *habeas* court "ordinarily should give [the trial court's] findings great deference," *Batson v. Kentucky*, 476 U.S. at 98 n.21.  This Court agrees with the trial court's determination that the prosecution's race-neutral reasoning was credible, as Judge Fahey was in the ideal position to weigh the demeanor and believability of ADA Price.  In the present action, Williams has failed to provide any evidence to rebut the trial court's finding that the prosecutor offered a non-pretextual, race-neutral explanation for exercising the peremptory challenges as to the potential jurors.  Accordingly, this Court concludes that Petitioner's *Batson* challenge lacks merit.  Given that Petitioner's *Batson* claim is meritless, he cannot establish any prejudice resulting from this procedural default.

Furthermore, upon reviewing the state court record, there is no basis to conclude that the denial of Petitioner's procedurally barred *Batson* claim would result in a fundamental miscarriage of justice. Therefore, the Court recommends that Williams' *Batson* claim be denied as procedurally defaulted.

### D.  Claims Afforded AEDPA Deference

### 1.  Ineffective Assistance of Counsel

In the first ground of his Amended Petition, Williams further contends, as he did on direct

appeal, that his trial counsel was ineffective by: (1) failing to call Detective Robert Lenhart as a defense witness and (2) neglecting to object to the allegedly prejudicial testimony of Detective Eric Carr.  Am. Pet., Ground One; Appellate Br. at pp. 16-19.   Respondent argues that this aspect of Petitioner's ineffective assistance of counsel claim is meritless.  Resp't Mem. at pp. 8-11.  The Appellate Division, Fourth Department held that Petitioner was not denied effective assistance of counsel.  *People v. Williams*, 738 N.Y.S.2d at 810.  Petitioner's leave to appeal these claims was rejected by the New York Court of Appeals.  *People v. Williams*, 776 N.E.2d at 12.

To establish ineffective assistance of counsel, a *habeas* petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) prejudice, *i.e.*, there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (cited in *Bell v. Cone*, 535 U.S. 685, 695 (2002)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *White v. Herbert*, 2006 WL 3728878, at *4 (N.D.N.Y. Dec. 15, 2006) (McCurn, S.J.).[15]  There is a strong presumption that counsel rendered adequate assistance as courts give high deference to counsel, and Petitioner "must overcome the presumption that the challenged action 'might be considered sound trial strategy.'"  *Gatto v. Hoke*, 809 F. Supp. 1030, 1038 (E.D.N.Y. 1992) (quoting *Strickland v. Washington*, 466 U.S. at 689), *aff'd mem.,* 986 F.2d 500 (2d Cir. 1992); *see also Jackson v. Conway*, 448 F. Supp. 2d 484, 492 (W.D.N.Y. 2006).

### a.  Failure to Call Detective Robert Lenhart

Petitioner claims his counsel was ineffective by failing to call Officer Robert Lenhart at trial

---

[15] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'"  529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

to testify that Larry McCraney provided him with a statement identifying Rausheen Cox or Raheem Dunway, not Petitioner, as the shooter.  Am. Pet., Ground One; *see also* Resp't App. at pp. A81-83. Petitioner has failed to demonstrate that counsel's decision not to call Detective Lenhart was objectively unreasonable.  "[C]ounsel's decision as to 'whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation.'" *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quoting *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997)).  In fact, the record reveals that Petitioner's counsel rigorously explored Larry McCraney's prior inconsistent statements at trial, which obviated the need to call Officer Lenhart to the stand.  Specifically, counsel decided to thoroughly cross-examine McCraney regarding the discrepancies in his statements to Detective Lenhart and his trial testimony identifying Petitioner as the shooter.  Trial Tr. at pp. 101-04 & 115-17.  In addition, counsel cross-examined McCraney with his grand jury testimony, which was consistent with his statements to Detective Lenhart but contradicted his trial testimony.  *Id.* at pp. 104-10 & 125-29.  McCraney plainly admitted he made inconsistent statements to Detective Lenhart.  *Id.* at pp. 101-04.  In light of the foregoing, calling Detective Lenhart at trial would have been unnecessary and duplicative.  Therefore, Petitioner has failed to demonstrate that defense counsel's decision not to call Detective Lenhart was objectively unreasonable, and that had counsel called the investigator as a defense witness, the outcome of his trial would have been different.

### b. *Failure to Object to Detective Eric Carr's Testimony*

Williams further alleges that his defense counsel failed to object to Detective Eric Carr's testimony.  Am. Pet., Ground One.  Detective Carr testified he received a call at police headquarters indicating that the suspect in the shooting was "Randy who lived on Lilac Street," and he subsequently checked the police computer to research whether there was a "Randy who lived on Lilac Street, having dealt with the police in the past year."  Trial Tr. at pp. 196-97.  Williams claims his attorney should have objected to this statement as prejudicial because it suggested to the jury that he had "criminal propensities." Am. Pet., Ground One.  The Court agrees with Respondent's argument that the statement "dealt with police" is open to several interpretations – to the jury's knowledge, Williams could have been listed in the police computer as a crime victim, a witness, or an individual who had filed a complaint with the police.  *See* Resp't Mem. at p. 11.  On the other hand, it is certainly possible that counsel made a reasonable strategic decision not to object to the statement to avoid highlighting it to the jury.  *See, e.g., Quinones v. Miller*, 2003 WL 21276429, at *50 n.78 (S.D.N.Y. June 3, 2003) (citing, *inter alia, Buehl v. Vaughn*, 166 F.3d 163, 176 (3d Cir. 1999) for the proposition that "[b]ecause the [objectionable] statements were fleeting, . . . trial counsel may have wished to avoid emphasizing what might have gone relatively unnoticed by the jury"); *United States v. Grunberger*, 431 F.2d 1062, 1069 (2d Cir.1970) for the proposition that "it is understandable that a defense counsel may wish to avoid underscoring a prejudicial remark in the minds of the jury by drawing attention to it [through an objection]"); *United States v. Corcoran*, 855 F. Supp. 1359, 1371 (E.D.N.Y.1994), *aff'd,* 100 F.3d 944 (2d Cir.), *cert. denied,* 517 U.S. 1228 (1996), for the proposition that trial counsel made a "reasonable tactical decision" not to object to damaging testimony, as it "would merely serve to highlight the testimony"); & *Gatto v. Hoke*, 809 F. Supp. at 1039 for the proposition that "counsel's failure to object

to the prosecutor's summation represent[ed] his tactical decision to avoid underscoring the prosecutor's statements so as to draw the jury's attention to them")).  As such, defense counsel's failure to object to Detective Carr's testimony was not objectively unreasonable.

Moreover, even assuming *arguendo* that defense counsel's representation was inadequate in this regard, the Court cannot find that the outcome of Petitioner's trial was prejudiced.  In the context of the entire trial, the investigator's statement was not so prejudicial as to require the state court judge to declare a mistrial.  *See Jackson v. Conway*, 448 F. Supp. 2d at 492.  In light of the substantial evidence against Williams, including witness identification of Williams as the shooter and evidence retrieved from his residence corroborating the identification, any objection by defense counsel would not have changed the outcome of the trial.  *See id.*

The Appellate Division's denial of these aspects of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent articulated in *Strickland*.  Accordingly, these allegations of ineffective assistance of counsel should be denied.

### 2.  Police Officers Conspired to Convict Petitioner Through the Use of False Evidence

In Ground Two of his Amended Petition, Williams alleges that the police engaged in a conspiracy to convict him through the use of false evidence.  Am. Pet, Ground Two.  Petitioner offers three specific allegations of police conspiracy: (1) Officer Daniel Jones provided false evidence when he testified regarding victim Larry McCraney's statements about Petitioner; (2) Detective Gary Coe tampered with evidence; and (3) Officer Brown provided transportation to the victim and his mother to trial, and spoke with the victim regarding his testimony.  Am. Pet., Ground Two.  In his July 2004 CPL Motion, Petitioner claimed this police conduct violated his rights under the Fifth and Fourteenth

Amendments to the United States Constitution.  Dkt. No. 61, Ex. 22, Mem. of Law at pp. 10-11.  Judge

Fahey determined that this aspect of Petitioner's motion to vacate was based upon the existence or

occurrence of facts which the moving papers failed to substantiate with sworn allegations, and denied

this basis for relief under CPL § 440.30(4)(b).[16]  July 2004 DO at p. 4.  Respondent maintains that the

state court's reliance on CPL § 440.30 is an independent and adequate state procedural ground barring

federal *habeas* review, and in any event, lacks merit.  Resp't Mem. at pp. 17-19.

   A split of authority exists within the Second Circuit regarding whether a denial of a motion

pursuant to CPL § 440.30(4)(b) is an "independent and adequate" state procedural rule barring federal

*habeas* review.  *See Gonzalez-Pena v. Herbert*, 369 F. Supp. 2d 376, 388-89 (W.D.N.Y. 2005) (citing

cases on both sides of the issue); *Douglas v. Hollins*, 2004 WL 187130, at * 3 (S.D.N.Y. Jan. 29, 2004)

(same); *Shaw v. Artuz*, 2001 WL 1301735, at *3-4 (S.D.N.Y. Oct. 19, 2001) (finding procedural default

where petitioner failed to comply with CPL § 440.30(4)(b)); *White v. Keane*, 2001 WL 699053, at *2

(S.D.N.Y. June 21, 2001) ("a violation of [CPL § 440.30(4)(b)] would create a procedural bar");

*Roberts v. Scully*, 875 F. Supp. 182, 192-93 n.7 (S.D.N.Y. 1995) (holding that state court denial under

CPL § 440.30(4)(b) constitutes independent and adequate state law ground).

   Other courts find that a denial pursuant to CPL § 440.30(4)(b) is a decision on the merits

because it applies only when a trial court denies a § 440.10 motion "[u]pon considering the merits."

N.Y. C.P.L. § 440.30(4)(b); *see also Lou v. Mantello*, 2001 WL 1152817, at *9 n.9 (E.D.N.Y. Sept. 25,

2001) (rejecting respondent's argument that denial under section 440.30(4)(b) was based on an

---

   [16] CPL § 440.30(1) provides, in relevant part, that if a CPL § 440.10 motion " is based upon the existence or occurrence of facts, the motion papers must contain sworn allegations thereof, whether by the defendant or by another person or persons."  A county court may reject the motion without conducting a hearing if, "[u]pon considering the merits of the motion . . . [t]he motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts."  CPL § 440.30(4)(b).

adequate and independent state law ground as "an erroneous interpretation" of the statute, which allows the trial court to deny a motion to vacate a judgment of conviction only 'upon considering the merits'"); *Ortiz v. Keohane*, 1995 WL 669904, at *4 n.5 (E.D.N.Y. Nov. 5, 1995) (same); *Muhammad v. Kirk*, 1993 WL 37502, at *4 (S.D.N.Y. Feb. 8, 1993) (same); *see also Smart v. Scully*, 787 F.2d 816, 820 (2d Cir. 1986) (stating that state court's denial of defendant's motion to vacate for failure to set forth sworn allegations in violation of CPL § 440.30 was not "an adequate and independent state ground warranting a federal *habeas* court's refusal to consider the underlying federal issues") (internal quotations omitted).

Given that section 440.30(4) applies, by its own terms, only when a trial court denies a motion to vacate "[u]pon considering the merits," this Court agrees with those decisions concluding that a denial based on section 440.30(4) is a decision on the merits, and cannot be a procedural bar to a federal *habeas* claim. Therefore, the Court will address the merits of Williams' claims that law enforcement conspired to convict him through the use of false evidence.

The use of "known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see also Mills v. Scully*, 826 F.2d 1192, 1195 (2d Cir. 1987). However, the use of false evidence does not comprise a constitutional violation unless there was a reasonable likelihood that the testimony affected the judgment of the jury or that it likely had an effect on the outcome of the trial. *See Giglio v. United States*, 405 U.S. at 154; *Napue v. Illinois*, 360 U.S. at 271.[17]

---

[17] The use of false evidence by the police is equally harmful as the use of such evidence by the prosecution. *See Rivers v. Martin*, 484 F. Supp. 162, 164 (W.D.Va. 1980). "The police are also part of the prosecution, and the taint on the trial is no less . . . . [I]f the police allow the State's attorney to [utilize false evidence] . . . [they] are practicing deception not only on the State's Attorney but on the court and the defendant." *Id.* (citations omitted).

Petitioner has failed to factually substantiate his claims that law enforcement compiled false evidence to convict him, let alone demonstrate that use of the alleged false evidence likely would have affected the outcome of his trial.

First, Williams objects to Officer Daniel Jones' testimony regarding the victim's statements to him about the shooter. Am. Pet., Ground Two. While in the ambulance en route to the hospital, Officer Jones asked McCraney who shot him, and McCraney yelled several times "Randy, Lilac, he lives on Lilac, Randy." Trial Tr. at pp. 161-63. Petitioner accuses Officer Jones of falsifying this testimony based on the following alleged evidence: (1) paramedic Valerie Harmatiuk, who also rode in the ambulance, never heard the victim make this statement to Officer Jones; (2) Officer Jones never filed a report documenting McCraney's statement; and (3) Officer William Foster was the first police officer to speak with the victim, and he testified McCraney did not know who shot him. Am. Pet., Ground Two; Traverse at pp. 15-16. However, Petitioner's allegations are unsupported by the record. According to the testimony adduced at trial, Ms. Harmatiuk testified that when Officer Jones asked McCraney if he knew who shot him, she overheard him "say that it was gang related, and someone from the Bloods had done it. . . . that's all I remember." Trial Tr. at p. 158. Ms. Harmatiuk's testimony does not contradict Officer Jones' testimony, and in no way supports Petitioner's allegation that Officer Jones fabricated McCraney's identification of Petitioner as the shooter. Moreover, Officer Foster, who was the first officer to speak with the victim, actually testified that McCraney asserted "the person who shot him lived in the hundred block of Lilac Street." Trial Tr. at p. 54. Contrary to Petitioner's argument, Officer Foster's testimony actually *corroborates* Officer Jones' conversation with McCraney. Further, whether Officer Jones filed a report regarding McCraney's statements in the ambulance is certainly not evidence of a conspiracy to convict Petitioner.

24

Second, Petitioner claims Detective Gary Coe "openly admitted to tampering with evidence" when he moved a starter pistol found at Petitioner's residence in order to photograph it.  Am. Pet., Ground Two.  However, at trial, Detective Coe testified that while assisting in the search of Petitioner's apartment, he recovered several items as evidence, including a starter pistol he found under the mattress in Petitioner's bedroom.  Trial Tr. at pp. 231-32 & 250-51.  The investigator stated he moved the pistol onto the mattress in order to take a clear picture of it.  *Id.* at p. 251.  Detective Coe never admitted to evidence tampering.  Petitioner's claim is based solely on conclusory allegations.  In any event, the starter pistol had no significance in the case against Petitioner.  Williams' reference to Officer Coe's testimony in no way supports his factually baseless contentions that the police conspired to convict him using false evidence.

Finally, Petitioner cites to the trial testimony of Doris Williams, in which she allegedly states Officer Brown provided transportation to the trial to her and her son, Larry McCraney, and spoke to McCraney about his testimony.  Am. Pet., Ground Two.  Petitioner appears to argue that McCraney corroborated his mother's admissions by testifying that "they" [*i.e.,* the police] told him he could not get his boots back from law enforcement until the case was over and thereby demonstrated that the police encouraged him to implicate Williams.  Am. Pet., Ground Two.  However, Doris Williams specifically testified at trial that while ADA Price spoke to McCraney about his testimony prior to the commencement of trial, Officer Brown simply assured them "that everything would be all right."  Trial Tr. at p. 136.  On these facts, Petitioner has not demonstrated that Officer Brown was involved in a conspiracy to convict him.

Petitioner cannot substantiate his claims of false evidence and police conspiracy based on the foregoing mischaracterizations of the record.  Williams therefore has failed to demonstrate that the use

of alleged false evidence affected the outcome of his trial.  The Court cannot grant *habeas* relief based upon unsubstantiated conclusions, opinions, or speculation.  *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (stating that federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); *Williams v. Burge*, 2005 WL 2179423, at *16 (N.D.N.Y. Aug. 15, 2005) (Peebles, M.J.), *adopted*, No. 02-0695, Dkt. No. 35 (N.D.N.Y. Dec. 7, 2005) (Hurd, D.J.).  It cannot be said that the County Court's rejection of Petitioner's insufficiently-substantiated claims was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, Petitioner's contentions that the police conspired to convict him through the use of false evidence should be **denied**.

### 3.  Prosecutorial Misconduct

In the Third Ground of his Amended Petition, Petitioner sets forth several allegations of prosecutorial misconduct, including that the prosecution relied on the perjured testimony of Larry McCraney in securing a verdict in violation of Petitioner's due process rights. Am. Pet., Ground Three; Traverse at pp. 17-20.  Williams first asserted this argument in his July 2004 CPL Motion.  Dkt. No. 61, Ex. 22, Mem. of Law at pp. 1-9.  The County Court denied Petitioner's motion to vacate because Petitioner failed to substantiate the facts alleged as required by CPL § 440.30.[18]  July 2004 CPL DO at p. 2.   Respondent argues that this aspect of Petitioner's prosecutorial misconduct claim is procedurally defaulted under CPL § 440.30.  Resp't Br. at pp. 20-21.

As previously discussed herein, this Court considers a denial based on CPL § 440.30(4) as a

---

[18] The County Court specifically relied on CPL § 440.30 in rejecting Petitioner's federal constitutional claim that this prosecutorial misconduct violated his due process rights under the United States and New York Constitutions.  July 2004 DO at p. 2.  Judge Fahey also asserted that the motion must be denied because Petitioner's prosecutorial misconduct claim previously was determined on the merits on direct appeal.  July 2004 DO at p. 2 (citing CPL § 440.10(2)(a)).  However, we note that while Petitioner set forth other factual claims of prosecutorial misconduct on direct appeal as articulated below, *see infra* Part II.E.2, he did not contend that the prosecution relied on false testimony to secure a conviction.  *See* Appellate Br. at pp. 21-22.  As such, we will examine the County Court's decision on this issue as based solely on CPL § 440.30.

decision on the merits, rather than a procedural bar to a federal *habeas* claim.  *See supra* Part II.D.2. The Court therefore will consider whether the state court's denial of this aspect of Williams' prosecutorial misconduct claim was an unreasonable application of clearly established Supreme Court precedent.

The Supreme Court examines claims for wrongful conviction based on perjured testimony under the Due Process Clause of the Fourteenth Amendment.  *Napue v. Illinois*, 360 U.S. at 269.  Under this standard, a conviction must be set aside if "the prosecution knew, or should have known, of the perjury" and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976).  The Second Circuit has declined "to draw the contours of the phrase 'should have known'" because the Supreme Court has not yet clearly established that *habeas* relief is available in the total absence of prosecutorial knowledge of perjury.  *Drake v. Portuondo*, 321 F.3d 338, 345 n.2 (2d Cir. 2003).

Petitioner points to the troubling inconsistencies in McCraney's statements regarding the identity of his assailant as the perjured testimony relied on by the prosecution.  Am. Pet., Ground Two. However, in light of the evidence set forth in state court, the County Court's decision on this issue was not an unreasonable determination of the facts.

Williams has offered no evidence whatsoever to indicate that McCraney's trial testimony was perjured, or that ADA Price knowingly permitted the testimony to be given.  Although McCraney's trial testimony identifying Petitioner as the assailant was inconsistent with his grand jury testimony, ADA Price had no reason to doubt the truthfulness of McCraney's testimony.  The victim's statement was corroborated by the testimony of Wayne Williams and Rausheen Cox and by evidence obtained from Petitioner's residence, including a loaded Rohm brand .22 caliber revolver, a black hooded sweatshirt,

black denim jeans, and boots tied with a blue bandana.  Trial Tr. at pp. 232, 316-19, & 375-76.  Indeed,

McCraney's testimony at trial was consistent with his identification of Williams as the assailant

immediately after the shooting.  *Id.* at pp. 44-45, 54, 133-34, & 163-64.  The issue of identification of

the shooter was fully explored by defense counsel when he thoroughly cross-examined McCraney

regarding his contradictory statements, and the jury was presented with both the prosecution and

defense's stances and inferences on this issue.  *Id.* at pp. 110 & 115-16.  The jury was able to formulate

its own conclusions regarding the victim's credibility.  Therefore, it is highly unlikely that McCraney's

testimony, even if false, affected the judgment of the jury or the outcome of the trial.  As such,

Petitioner's allegation that the prosecutor knowingly relied on perjured testimony of the victim should

be **denied**.

### 4.  Newly Discovered Evidence

In the Fourth Ground of his Amended Petition, Williams appears to contend that newly-

discovered evidence has developed since his trial to exonerate him.  Am. Pet., Ground Four.  Petitioner

asserts that:

> Witness Marcus Burns gave a statement after Petitioner's trial, that his cousin Larry
> McCraney told him that the police told him to inculpate Petitioner.  Further, Mr. Burns
> stated to his attorney James F. Greenwald, in a statement, that he (Mr. McCraney) told
> him in the hospital that co-defendant Raheem had shot him.  Not Petitioner.

*Id.*

He further alleges that the statement of Marcus Burns would result in an acquittal if he were granted

a new trial.  Traverse at p. 20.  Petitioner first raised this claim in his July 2004 CPL Motion.  July 2004

CPL Motion at pp. 28-30.  That court rejected Petitioner's argument, stating that "evidence which

would merely tend to impeach or discredit prior testimony of a witness is not sufficient new evidence

to set aside a judgment of conviction."  July 2004 DO at p. 4.  The County Court found that since the

purported "new evidence" would serve only to impeach the credibility of Larry McCraney, it was insufficient to grant Petitioner's motion. *Id.*

Newly discovered evidence regarding the guilt or innocence of a petitioner is not a ground to grant *habeas corpus* relief. *Townsend v. Sain*, 372 U.S. 293, 317 (1963), *overruled on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Rather, for *habeas* relief to be available, the newly discovered evidence must relate to an independent constitutional violation in the underlying state court proceedings. *Herrera v. Collins*, 506 U.S. 390 (1993). In *Herrera*, the Supreme Court emphasized that the due process clause guarantees only that a trial is procedurally fair, and not that the verdict is factually correct. *Id.* at 401-02. Pointing to constitutional sufficiency-of-the-evidence review, *Herrera* highlights the requirement that the record contain sufficient evidence, viewed in the light most favorable to the prosecution, to justify a rational juror in finding a defendant guilty beyond a reasonable doubt. *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)); *see also Russell v. Ricks*, 2006 WL 1555468, at * 17 (quoting *Jackson*, 443 U.S. at 319 n.13, and stating that a federal district court is precluded from "'mak[ing] its own subjective determination of guilt or innocence'"). A state court's refusal to vacate a conviction based on newly discovered evidence violates due process when: "(1) the new evidence could not, with due diligence, have been discovered before or during trial; (2) evidence at trial was false and material; and (3) the jury probably would have acquitted the defendant." *Keller v. Herbert*, 1998 WL 34002606, at * 3 (N.D.N.Y. Sept. 9, 1998) (Sharpe, M.J.) (citing *Sanders v. Sullivan*, 863 F.2d 218, 224-26 (2d Cir. 1988), *adopted*, No. 96- 1158, Dkt. No. 19 (N.D.N.Y. Oct. 7, 1998) (Scullin, D.J.).

"If newly discovered evidence indicates that testimony given at trial was perjured, the grant of a new trial depends on 'the materiality of the perjury to the jury's verdict and the extent to which the

prosecution was aware of the perjury.'" *United States v. Wong*, 78 F.3d 73, 81 (2d Cir. 1996) (quoting *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991)). *Habeas* relief is not warranted unless the perjured testimony is "material in the sense that its suppression undermines confidence in the outcome of the trial," and is not cumulative. *Chamberlain v. Mantello*, 954 F. Supp. 499, 507 (N.D.N.Y. 1997) (Kahn, D.J.) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)); *see also Clark v. Irvin*, 844 F. Supp. 899, 907 (N.D.N.Y. 1994) (Hurd, M.J.)  Therefore, newly discovered evidence that would merely impeach a witness is insufficient to warrant *habeas* relief. *See Clark v. Irvin*, 844 F. Supp. at 907; *see also Mastin v. Senkowski*, 297 F. Supp. 2d 558, 598 (W.D.N.Y. 2003).

Examining Williams' claim according to the standard outlined in *Herrera*, it is evident the County Court's decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.  In light of the compelling evidence against Williams adduced at trial, Marcus Burns' statement would have had little effect on the jury.  Mr. Burns' statement simply would have impeached Larry McCraney's testimony and would have been cumulative of other testimony adduced at trial.  The trial record establishes that the jury was well-aware McCraney made prior inconsistent statements regarding the identification of the shooter in order to obtain his boots back from law enforcement investigators.  Trial Tr. at pp. 101-10.  Mr. Burns' statement, a hearsay account of McCraney's alleged inconsistent identification, would not have substantially affected the jury's view of McCraney's credibility.  McCraney's credibility was raised by defense counsel during a rigorous cross-examination and was weighed by the jury during its deliberations. *Id.*  Even assuming Mr. Burns' statement was admitted as newly discovered evidence at trial, it is highly doubtful that the proffered evidence would lead to Petitioner's acquittal.  This evidence is "nothing more than the sort of cumulative impeachment material that is routinely held insufficient to warrant a new trial, or in this

instance, habeas relief." *Chamberlain v. Mantello*, 954 F. Supp. at 511 (citations omitted). The County Court's finding that Marcus Burns' statement simply tended to affect witness credibility was not an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d)(2). Williams cannot establish an independent constitutional violation as required by *Herrera*, and therefore the Court recommends that Williams' newly discovered evidence claim be **denied**.

### E. Claims Afforded *De Novo* Review

### 1. Ineffective Assistance of Counsel

In the First Ground of his Amended Petition, Williams alleges, as he did in his July 2004 CPL Motion, that his trial counsel, James Stern, was ineffective by: (1) failing to interview and call as defense witnesses Officer Lisa Negrisor and Officer Richard Morris; and (2) failing to properly raise a *Batson* challenge. Am. Pet., Ground One; July 2004 CPL Motion at pp. 18-28. In the Sixth Ground of his Amended Petition, Williams raises, as he did in his July 2004 CPL Motion, that Stern failed to properly discuss plea offers with him. Am. Pet., Ground Six; July 2004 CPL Motion at pp. 17-18. The County Court denied these allegations pursuant to CPL § 440.10(2)(a)[19] because Petitioner raised the issue of ineffective assistance of counsel on direct appeal and the appellate court determined he was not deprived of effective assistance. *See* July 2004 DO at p. 4.[20] Respondent argues that these claims of ineffective assistance of counsel are procedurally barred by CPL § 440.10(2)(a), and, in any

---

[19] CPL § 440.10(2)(a) provides in relevant part that a county court must deny a motion to vacate a judgment when "[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue."

[20] Contrary to the County Court's observations, this Court notes that Petitioner's allegations of ineffective assistance raised on direct appeal do not include the aforementioned theories, which were raised for the first time in his July 2004 CPL Motion.

event, have no merit.  Resp't Mem. at pp. 11-13 & 24-28.

District Courts within the Second Circuit disagree as to whether a state court's reliance on CPL § 440.10(2)(a) in denying a constitutional claim results in the procedural default of that claim on federal *habeas* review.  *See, e.g., Cruz v. Berbary*, 2006 WL 2946946, at *8 (W.D.N.Y. Oct. 16, 2006) (concluding that CPL § 440.10(2)(a) constitutes adequate and independent state ground resulting in procedural default of petitioner's federal *habeas* claims); *Hronopoulos v. Keane*, 1999 WL 529559, at *4 (E.D.N.Y. July 21, 1999) (finding that petitioner's claim was procedurally barred under CPL § 440.10(2)(a)); *Encarnacion v. Walker*, 1998 WL 34002608, at *4-5 (N.D.N.Y. Aug. 21, 1998) (Sharpe, M.J.) (identifying CPL §§ 440.10(2)(a) and (b) as adequate and independent state procedural rules), *adopted*, No. 96-329, Dkt. No. 17 (N.D.N.Y. Aug. 24, 1999) (Scullin, D.J.); *cf. Douglas v. Hollins*, 2004 WL 187130, at * 6 n.5 (S.D.N.Y. Jan. 29, 2004) (finding that state court ruling under CPL § 440.10(2)(a) "does not constitute a finding of procedural default that precludes federal habeas review of the merits"); *Guzman v. Couture*, 2003 WL 165746, at *11 (S.D.N.Y. Jan. 22, 2003) ("A dismissal under § 440.10(2)(a) is not based on any procedural default.  To the contrary, it is premised on a prior decision.") (quotations omitted); *Taylor v. Kuhlmann*, 36 F. Supp. 2d 534, 546 (E.D.N.Y. 1999) (same).[21]  While this aspect of Williams' ineffective assistance claim is arguably procedurally defaulted, given the diverging views regarding which standard a federal *habeas* court should apply when a state court ruling relies on CPL § 440.10(2)(a), this Court will review *de novo* the County Court's decision denying these theories of ineffective assistance of counsel.  *See, e.g., Lyons v. Conway*, 2006 WL

_____

[21] The Second Circuit has not conclusively determined whether CPL § 440.10(2)(a) is an adequate and independent state ground precluding federal *habeas* review on the merits.  *See Fernandez v. Artuz*, 402 F.3d 111, 115 n.4 (2d Cir. 2005) (identifying CPL §§ 440.10(2)(a) and 440.10(2)(c) as procedural bars under New York law) (citing *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)); *but see Silverstein v. Henderson*, 706 F.2d 361, 368 (2d Cir. 1983) (stating that a state court ruling under CPL § 440.10(2)(a) "does not constitute a finding of procedural default that would bar federal consideration of [petitioner's] claims").

2847281, at *4 (N.D.N.Y. Sept. 30, 2006) (Mordue, C.J.) (citing *Marengo v. Conway*, 342 F. Supp. 2d 222, 227 (S.D.N.Y. 2004) ("If the state court's adjudication of a petitioner's federal claim is not based on the merits – for example, when the decision rests solely on procedural grounds . . . the . . . federal court must apply a pre-AEDPA *de novo* review to the state court's disposition of the federal claim") (citing *Cotto v. Herbert*, 331 F.3d at 230) (other citation omitted))).

### a.   Failure to Call Officers Negrisor and Morris as Defense Witnesses

Williams alleges that Officer Lisa Negrisor should have been called as a defense witness to testify regarding her interview of Larry McCraney's mother, Doris Williams.  Am. Pet., Ground One. Detective Negrisor's report states that she interviewed Mrs. Williams immediately upon her arrival at the hospital to see her son, and Mrs. Williams indicated she had never heard McCraney mention anyone named "Randy."  July 2004 CPL Motion at Ex. D.  According to Petitioner, Mrs. Williams testified at trial that, in the presence of a female police officer, McCraney told her "Randy" shot him.  Am. Pet., Ground One.

Contrary to Petitioner's allegations, Stern's decision not to call Detective Negrisor was objectively reasonable.  First, Doris Williams' trial testimony does not clearly contradict Detective Negrisor's report because it is indiscernible from the report whether Mrs. Williams spoke with the detective *before* or *after* she spoke with her son at the hospital.  Even assuming Mrs. Williams made inconsistent statements regarding her conversations with her son, defense counsel made the strategic decision to cross-examine the victim as to his own inconsistent statements about the shooter.  Stern reasonably decided that calling Detective Negrisor as a defense witness to testify regarding Doris Williams' conversations with her son simply was not as effective as questioning the victim regarding his statements to his mother and others.  *See* Trial Tr. at pp. 101-10.  Second, if Detective Negrisor was

the female officer present when McCraney identified "Randy" as the shooter, her testimony regarding this issue would have supported the prosecution, rather than Petitioner's case.

Williams also contends that his counsel should have called Detective Richard Morris as a defense witness.  Am. Pet., Ground One.  Petitioner claims Detective Morris interviewed Charles Johnson and would have testified that Mr. Johnson identified someone other than Petitioner as the shooter.  *Id.*  However, more importantly, the victim provided inconsistent statements regarding the identity of the shooter.  Trial Tr. at pp. 101-10.  While Mr. Johnson did not testify at trial, Larry McCraney testified and was extensively questioned by defense counsel regarding his inconsistent identifications.  *Id.*  As such, any testimony by Detective Morris regarding Mr. Johnson's statements would have been irrelevant and extraneous.

Williams has failed to overcome the presumption that Stern did not stray from reasonable professional judgment in declining to call either Detective Negrisor or Detective Morris at trial.  Even if counsel had erred in formulating this strategic decision, the testimony of these witnesses at trial would not have changed the outcome of the proceedings. Therefore, these allegations of ineffective assistance of counsel should be **denied**.

### b.  Failure to Raise Batson Issue

Williams further contends that his counsel was ineffective by failing to properly raise a *Batson* challenge during jury selection.  Am. Pet., Ground One.  Specifically, Petitioner claims Stern failed to demonstrate pretext for the prosecution exercising peremptory challenges on two African-Americans in the jury pool.  *Id.*

Even assuming, *arguendo*, that defense counsel unreasonably failed to meet his burden of showing that the prosecution's reasons for exercising the challenges were pretextual, Petitioner did not

suffer any prejudice because his *Batson* claim lacks merit. *See supra* Part II.C. As detailed above, upon reviewing the jury selection transcript, this Court agrees with the trial court's determination that the prosecution's race-neutral reasoning was credible, and Williams has failed to provide any evidence to the contrary. *Id*.

Significantly, it is entirely possible that Stern recognized the futility of the *Batson* challenge and strategically decided to abandon the motion. An attorney's purported failure to pursue a meritless *Batson* claim cannot be the basis of an ineffective assistance of counsel claim. *See, e.g., United States v. Franklin*, 157 F.3d 90, 97 (2d Cir. 1998) (finding that petitioner, alleging ineffective assistance of counsel based on his attorney's waiver of *Batson* claim, was unable to meet the requirements of *Strickland* where the challenge was meritless); *Melenciano v. Walsh*, 2005 WL 768591, at *7-8 (S.D.N.Y. Apr. 6, 2005) ("[T]rial counsel's failure to pursue a meritless *Batson* challenge cannot be the foundation for Petitioner's ineffective assistance counsel [sic].") (citation omitted). Accordingly, Williams' ineffective assistance *Batson* claim should be **denied**.

### c. *Failure to Discuss Plea Offers with Petitioner*

Petitioner further asserts that Stern was ineffective by failing "to properly discuss plea offer[s] with Petitioner and his family." Am. Pet., Ground Six. Specifically, Williams claims his attorney informed him that the District Attorney's plea offer was a determinate sentence of seven (7) years. Am. Pet., Ground Six; *see also* Traverse at p. 12. However, according to Petitioner, Stern informed his mother that the plea offer was a seven (7) to fifteen (15) year indeterminate sentence, and she was never aware of the seven (7) year determinate offer. Am. Pet., Ground Six; *see also* Traverse at p. 12. Williams also contends that he was misled when Stern advised him to reject the plea offer because the case was "weak" and he could prevail at trial. Am. Pet., Ground Six.

35

Under the first prong of the *Strickland* test, the effective assistance of counsel requires a defense attorney to provide the client with his professional advice regarding the "crucial decision" of whether to accept a plea offer.  *Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996).  A claim of ineffective assistance of counsel during plea negotiations will lie where an attorney fails to communicate a plea offer, or fails to exercise the proper skill and diligence in advising the client whether to accept or reject the offer.  *Id.*  Applying the second prong of *Strickland*, a petitioner must demonstrate a "reasonable probability" that absent counsel's errors in conveying or explaining a plea offer, the petitioner would have accepted the offer.  *Id.* at 49; *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the . . . 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

As to the first *Strickland* prong, by Williams' own admission, Stern communicated the alleged plea offer of seven (7) years determinate sentence to him.[22]  Traverse at p. 12.  The fact that Petitioner's mother was allegedly unaware of this offer, but purportedly was informed of a less desirable plea offer of seven (7) to fifteen (15) years indeterminate, is irrelevant – counsel's duty was to advise *Petitioner* regarding the plea, not his mother.  *See Booth v. Cont'l Ins. Co.*, 634 N.Y.S.2d 650, 655 (N.Y. Sup. Ct., Westchester County 1995) ("An attorney owes his client undivided loyalty and allegiance.").  Petitioner appears to argue that if his mother had known about the seven year deal, she would have encouraged him to accept it.  Am. Pet., Ground Six; Traverse at pp. 12-13.  However, defense counsel's actions were not inadequate simply because Petitioner's mother allegedly would have convinced Petitioner to

_____

[22] The record before this Court does not indicate whether a plea offer was made, let alone improperly conveyed to Petitioner and/or his mother.  However, based on Petitioner's claims and the evidence presently in the record, an evidentiary hearing is not required to explore the factual basis of Petitioner's allegations.  Even accepting Petitioner's version of the facts as true, defense counsel's actions did not constitute ineffective assistance.

accept a deal had she been fully informed of the more favorable plea. *See, e.g., People v. Davis*, 534 N.Y.S.2d 429, 430 (N.Y. App. Div., 2d Dep't 1988) (finding that trial court's denial of defendant's request for an adjournment to discuss proposed plea agreement with his family was not improper). Furthermore, Williams' argument defies logic – if he were so reliant on his mother's advice, he would have informed her of the seven year deal communicated to him by Stern *prior* to rejecting the plea and proceeding to trial. Indeed, Williams admits to consulting with his mother upon learning of the plea deal, and she "request[ed]" he proceed to trial. *See* Am. Pet., Ground Six. This Court finds it incredible that Williams and his mother failed to discuss the terms of any plea offers on the table at that critical time. Williams' allegation that Stern failed to adequately inform his mother of the deal is a contrived attempt to avoid the consequences of his convictions.]

Even if, *arguendo*, Petitioner's argument is construed to allege that Stern was ineffective by failing to inform *him* of the seven to fifteen year indeterminate plea offer, this claim still lacks merit. The trial court informed Petitioner that if a disposition of the case was determined by October 5, 2000, any commitment would be capped at fifteen years. Traverse, App. I at pp. 4-5. If the case was not resolved by October 5, the trial court stated "that commitment isn't going to be binding and whatever disposition he enters into after that or if he gets convicted after trial[,] sentencing is wide open up to 25 years." *Id.* at p. 5. Based on this record, it is evident Petitioner was aware that the district attorney's office had the discretion to suggest a less favorable deal capped at fifteen years, rather than seven years determinate, and Petitioner further knew the consequences of rejecting such a deal. Moreover, whether Petitioner knew about a less desirable seven to fifteen year deal is not determinative, as Petitioner makes clear he would have rejected any other offer in favor of the seven year determinate deal. *See* Traverse at p. 13.

After informing Williams of the plea offer, counsel's only further obligation was to provide adequate advice, based on his expertise and knowledge of the facts and the law, regarding whether Williams should accept the plea offer.  *See Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000); *Boria v. Keane*, 99 F.3d at 497 ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948)).  Williams faults his attorney for advising him not to take the plea offer because counsel felt the case against Williams was weak.  Am. Pet., Ground Six.  Adequate advice in this context requires counsel to "usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed."  *Purdy v. United States*, 208 F.3d at 45.  As the Second Circuit observed, counsel must provide the client with professional advice while allowing the defendant to make the ultimate decision whether to plead guilty. *Id.* (citing Model Rules of Professional Conduct Rule 1.2(a) (1995) ("In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered."). "Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because '[r]epresentation is an art,' and '[t]here are countless ways to provide effective assistance in any given case.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. at 689 & 693).  An attorney rendering advice in this area may consider, *inter alia*, "the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea . . . , whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." *Id.*

Clearly, Williams and Stern discussed the possibility of a plea because, according to Williams, Stern advised him that the case against him was weak and he should proceed to trial. Am. Pet., Ground Six. As such, it is more likely than not that they discussed the strengths and weaknesses of Petitioner's case, as well as the benefits of accepting the plea. In fact, Petitioner admits that he deemed the plea offer "inadequate" and he therefore "allowed counsel" to reject the offer and proceed to trial. *See* Traverse at p. 12. This statement supports the logical conclusion that Williams and Stern discussed the potential plea, which Williams ultimately decided to reject. *See* Model Rules of Professional Conduct Rule 1.2(a) (1995) (indicating the ultimate decision whether to accept or to reject a plea lies with client); *see also* New York Code of Prof'l Responsibility EC 7-7 (2003) (same). The Court cannot fault Stern for opining that the case against Williams was weak in light of the conflicting, ambiguous pre-trial evidence regarding the identity of the shooter. In addition, Petitioner necessarily was aware of the alternative sentences to which he would be exposed if he did not plea. Specifically, Petitioner knew that if a disposition was not reached by October 5, 2000, he could be sentenced up to twenty-five years. Traverse, App. I at pp. 4-5. In this regard, Judge Fahey and Stern engaged in the following discourse on the record in advance of trial:

| | |
|---|---|
| THE COURT: | If there is going to be a disposition of the case put it down for October 5th. If there is no disposition on October 5th then any commitments made with respect to sentencing are not going to be binding, understand that. |
| MR. STERN: | I don't believe we made any commitments other than you wouldn't do less than fifteen years. |
| THE COURT: | I would indicate I would cap it at fifteen years. |
| MR. STERN: | That's right, you wouldn't do more than fifteen years. |
| THE COURT: | If you don't resolve it on the 5th of October you know that commitment isn't going to be binding and whatever disposition |

|  | he enters into after that or if he gets convicted after trial sentencing is wide open up to 25 years. |
| MR. STERN: | I understand, your Honor.  My client [sic] I would like to place on the record, my client is in court and I believe he heard, your Honor. |

*Id*.

Williams surely comprehended that he would receive a shorter sentence if he pled guilty than if he were convicted after trial.

Accordingly, it appears that Williams was informed of the strengths and weaknesses of his case, was apprised of his chances of prevailing at trial in the face of ambiguous evidence regarding the identity of the shooter, and was aware of the disparity in sentencing after a full trial as compared to a guilty plea. *See Purdy v. United States*, 208 F.3d at 45.  Williams therefore cannot overcome the strong presumption that his counsel's advice was reasonable under *Strickland*.  This Court cannot measure the reasonableness of defense counsel's advice solely on the fact that Williams ultimately was convicted. *See Charris v. Artuz*, 32 F. Supp. 2d 139, 141-42 (S.D.N.Y. 1998) (discouraging *habeas* courts from measuring the quality of an attorney's advice regarding plea deal on the "ultimate event" that petitioner was convicted) (quoting *Costello v. Costello*, 103 N.E. 148, 152 (N.Y. 1913) ("[A] wisdom developed after an event, and having it and its consequences as a source, is a standard no man should be judged by.")).   On *habeas* review, Petitioner is attempting to impermissibly use hindsight, after being convicted, to receive the benefit of a previously rejected advantageous plea offer.   However, Petitioner's allegations fail to establish that counsel's performance fell below an objective standard of reasonableness during plea negotiations.

Even if defense counsel's advice concerning the plea offer was unreasonable, the deficiency would not have prejudiced Williams.  Under this second prong of the *Strickland* test, Williams must

establish a reasonable probability that but for his counsel's inadequacies, he would have accepted the plea. *See Purdy v. United States*, 208 F.3d at 49. In his Traverse, Petitioner states he would have accepted the seven year determinate deal if it was "in fact the offer." Traverse at p. 13. However, a petitioner's "self-serving, post-conviction" statement is insufficient to meet his burden of proving that he would have accepted the plea if properly advised by his attorney. *See United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998); *see also Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003) ("[I]n most circumstances a convicted felon's self-serving testimony is not likely to be credible."); *Smith v. McGinnis*, 2003 WL 21488090, at * 4 (S.D.N.Y. June 25, 2003) (quotations omitted); *Gluzman v. United States*, 124 F. Supp. 2d 171, 177 (S.D.N.Y. 2000). The Court does not find credible Williams' claim that he would have accepted the plea. In the very Traverse where he alleges he would have accepted the plea, Williams also plainly states that when he was, in fact, offered the seven year deal, he determined the offer was "inadequate" and as such, he "allowed" counsel to reject the offer. *See* Traverse at p. 12. Indeed, Williams asserted he would have accepted the plea only *after* Respondent alerted him that he must make such a showing in order to prevail under the prejudice prong of *Strickland*. *See* Resp't Mem. at p. 12. Williams' contradictory statements serve only to discredit him before this Court. The Court therefore recommends that this claim of ineffective assistance of counsel should also be **denied**.

## 2. Prosecutorial Misconduct

In his Third Ground for *habeas* relief, Petitioner argues that the prosecution engaged in misconduct by: (1) eliciting prejudicial testimony from witness Wayne Williams regarding his fear of testifying due to threats against him and his family; (2) asking leading questions throughout trial and using the examination process to testify; and (3) attempting to shift the burden of proof to the defense

during summation, thereby affecting the verdict. Am. Pet, Ground Three. On direct appeal, Williams claimed this alleged misconduct denied him a "fair trial." Appellate Br. at pp. 21-22. The Appellate Division, Fourth Department held that Williams' claim of prosecutorial misconduct "is in part unpreserved for our review, and in any event, is lacking in merit." *People v. Williams*, 738 N.Y.S.2d at 810. Respondent addresses these allegations on the merits because the Fourth Department did not identify which aspect of Petitioner's prosecutorial misconduct claim was not preserved. Resp't Br. at p. 21.

The standard to be employed by this Court in analyzing these allegations is murky at best. Specifically, whether this claim is procedurally defaulted or "adjudicated on the merits" is unclear. "[A] procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (citations omitted). Where a state court has expressly found both a failure to preserve the argument for appellate review and states alternatively that the argument lacks merit, the procedural bar applies. *Fama v. Comm'r of Corr. Servs.*, 235 F.3d at 809 & 810 n.4 (citing *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996) & *Velasquez v. Leonardo*, 989 F.2d 7, 9 (2d Cir. 1990)). If there is ambiguity, however, as in "when a state court uses language such as '[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Jimenez v. Walker*, 458 F.3d 130, 139 (2d Cir. 2006) (citations omitted); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d at 810; *see also Coleman v. Thompson*, 508 U.S. at 735.[23]

---

[23] Moreover, in a case where both procedural and substantive arguments have been advanced by the parties but no opinion is issued by the state court explaining its rejection of a claim, a federal court may properly assume that the state court based its decision on state procedural grounds absent "good reason" to believe the state courts' silence represents a decision to deny the claim on its merits. *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993).

The Appellate Division, Fourth Department's finding that Petitioner's prosecutorial misconduct allegations were "in part unpreserved and in any event . . . lacking in merit" is not necessarily a clear or express statement of reliance on a state procedural rule. *See, e.g., Suriel v. Burge*, 2006 WL 2583203, at *5 (E.D.N.Y. Sept. 6, 2006) (reviewing prosecutorial misconduct claim *de novo* where Appellate Division found contention "in part, unpreserved, and in any event does not warrant reversal"). In addition, the Fourth Department's holding is not clearly "on the merits" because the appellate court failed to specify which factual allegations were unpreserved and meritless. *See Jimenez v. Walker*, 458 F.3d at 144 n.14 ("[I]t is self-evident, we believe, that a state court can fail to clearly express its reliance on a procedural basis while, at the same time, not adjudicating the claim on the merits [as required for AEDPA deference to apply].") (quoting *DeBerry v. Portuondo*, 403 F.3d at 67 n.7). "If a federal claim has not been adjudicated on the merits, AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*." *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006). Given the lack of clarity inherent in the state court's disposition, this Court will review *de novo* the trial court's decision denying these theories alleging prosecutorial misconduct. *Cf. id.* at 204 ("It is unnecessary in this case to decide whether to afford AEDPA deference to the decision of the Appellate Division because, even applying a *de novo* review standard, we find that the petitioner has failed to establish any violation of federal law."); *see also Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying *de novo* standard to federal claim not reached by state court); *Boyette v. LeFerve*, 246 F.3d at 89 (refusing to afford AEDPA deference to part of state court decision where it was "unclear which of the hearing court's findings the appellate court

rejected").[24]

A criminal defendant's right to a fair trial is mandated by the due process clause of the United

States Constitution. *Albright v. Oliver*, 510 U.S. 266, 273 n.6 (1994).[25] For *habeas* relief to be granted

based on a claim of prosecutorial misconduct, however, the alleged misconduct must have "so infected

the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the

prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). To prevail on a prosecutorial misconduct

claim, a *habeas* petitioner must demonstrate that the prosecutor engaged in "egregious misconduct . .

. amount[ing] to a denial of constitutional due process." *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir.

1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. at 647-48). To determine whether a prosecutor's

conduct caused substantial prejudice, a *habeas* court should consider: (1) the severity of the

---

[24] It also bears mentioning that whether Petitioner exhausted these claims in state court by merely arguing he was denied a "fair trial" remains unclear. Indeed, the exhaustion requirement "is not automatically satisfied every time an alleged trial error is claimed to deny a defendant a 'fair trial.'" *Kirksey v. Jones*, 673 F.2d 58, 60 (2d Cir. 1982) ("Alleging lack of a fair trial does not convert every complaint about evidence or a prosecutor's summation into a federal due process claim."); *see also Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir. 1984); *Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 193 (2d Cir. 1982) ("The concept of fairness embraces many concrete notions . . . . Obviously not every event in a criminal proceeding that might be described as 'unfair' would be a violation of the defendant's rights under the Constitution."). A fair trial claim has constitutional implications if it is based on factual allegations that commonly call to mind due process constraints. *Daye v. Attorney Gen. of the State of New York*, 696 F.2d at 193. Some courts would consider Petitioner's claims of improper prosecutorial summation "well within the mainstream of constitutional litigation." *See, e.g., Walker v. Bennett*, 262 F. Supp. 2d 25, 33 (W.D.N.Y. 2003) (finding that, although petitioner couched his prosecutorial misconduct claim only in terms of state law on direct appeal, allegations that he was denied a fair trial due to prosecutor's prejudicial statements in summation called to mind constitutional issues of due process) (quoting *Daye v. Attorney Gen. of the State of New York*, 696 F.2d at 194); *D'Allesandro v. Fischer*, 2005 WL 3159674, at * 15 (S.D.N.Y. Nov. 28, 2005) (considering claim challenging propriety of prosecutor's summation exhausted for purposes of *habeas* review). However, a prosecutor's method of examining witnesses and eliciting allegedly prejudicial testimony from those witnesses may simply raise questions of state evidentiary law. *See, e.g., Petrucelli v. Coombe*, 735 F.2d at 688. Although this aspect of Williams' prosecutorial misconduct claim arguably is unexhausted, the Court will consider these allegations on *habeas* review in light of the ambiguity.

[25] "A right to a fair trial is a right . . . protected by the due process clause of the Fourteenth Amendment." *Adamson v. California*, 332 U.S. 46, 53 (1947) (footnote omitted), *overruled on other grounds, Malloy v. Hogan*, 378 U.S. 1 (1964).

misconduct; (2) the measures adopted by the trial court to cure the misconduct; and (3) the certainty

of conviction absent the prosecutor's remarks. *See DeVivo v. Superintendent*, 2006 WL 581145, at *21

(N.D.N.Y. March 8, 2006) (Kahn, D.J. and Peebles, M.J.) (citing *Bentley v. Scully*, 41 F.3d 818, 824

(2d Cir. 1994) & *Floyd v. Meachum*, 907 F.2d at 353); *Moore v. Warden*, 380 F. Supp. 2d 321, 330

(S.D.N.Y. 2005).

### a. Prejudicial Testimony of Wayne Williams

Williams alleges that ADA Price improperly elicited prejudicial testimony from witness Wayne

Williams regarding his fear of testifying due to threats to him and his family. Am. Pet., Ground Three.

ADA Price questioned Wayne Williams as follows:

> Q:    Do you remember talking with your lawyer this morning about your concerns
>       about testifying in Court?
>
> A:    Yup.
>
> Q:    And what else are you concerned about with your testimony, sir?
>
> A:    If I go home I know I'm gonna have to watch out.
>
> Q:    And did you also express concerns about your family?
>
>       DEFENSE COUNSEL:        Objection, leading.
>
>       THE COURT:              Yeah, I'll sustain that.
>
> Q:    Was there anything else, sir, in addition to your testimony that you were worried
>       about?
>
> A:    All I know is when I go home I'm gonna have to watch my back, that's all. . .
>       .
>
> Q:    And have you talked with other members of your family before coming in here today?
>
> A:    Nope. . . .
>
> Q:    And did you discuss with your attorney some of your concerns about coming in

to testify?

A:     Yup.

Q:     And what did you discuss with your attorney?

A:     I told her what I just said, I'm gonna have to watch my back 'cause I know there gonna be people looking out there for me.

Q:     And did you also discuss with your attorney your concerns concerning your family and some of the things that have happened to them?

A:     Yup, 'cause some of them already came to my house.

Q:     And you weren't there when these people came to your house, were you?

A:     Nope.

Q:     Other members of your family were?

A:     Yup.

Q:     And that's why you are fearful about testifying here today?

A:     Yup.

        DEFENSE COUNSEL:          Objection, leading.

        THE COURT:                      I'll sustain it.

Trial Tr. at pp. 396-98.

Petitioner is unable to demonstrate he was denied due process or a fundamentally fair trial based on ADA Price's questioning of Wayne Williams.  Even assuming, *arguendo*, that this line of questioning was inappropriate, the misconduct was not so severe or pervasive as to deprive Williams of his right to a fair trial.  Substantial evidence was adduced at trial which implicated Petitioner in the shooting of Larry McCraney, including the identification of Petitioner as the perpetrator by McCraney, Wayne Williams, and Rausheen Cox, as well as evidence found in Petitioner's residence.  Trial Tr. at pp. 92, 133-34, 163-64, 231-32, 316-19, & 375-76.  The fact that testimony was adduced regarding

46

Wayne Williams' fear of testifying was not probative of Petitioner's guilt or innocence. This Court cannot conclude that this testimony so infected Petitioner's trial with unfairness as to make his conviction on the charges in the Indictment a denial of due process.

### b. Prosecutor's Leading Questions

Williams also claims that ADA Price "constantly" led witnesses throughout the trial, and used the questioning process to testify. Am. Pet, Ground Three. Petitioner cites to testimony from various witnesses presumably as the basis of this claim. *Id.* (citing Trial Tr. at pp. 85-87, 96-97, 133-34, 314-21, & 375-79). The testimony referenced by Petitioner can be summarized as follows: (1) Larry McCraney testified he walked by Petitioner's house on Lilac Street on the day of the shooting and identified the individuals sitting on the porch of the house as Wayne, Rausheen, and Randy; the individuals asked McCraney and his friends whether they were members of the "Crips" gang, to which they responded "no," Trial Tr. at pp. 85-87; (2) McCraney testified that while in the hospital, he informed his mother and the police that Petitioner shot him, but later he told them he did not know who shot him because he did not want to come to court and wanted to get his personal effects back from the police, Trial Tr. at pp. 96-97; (3) McCraney's mother, Doris Williams, testified that when she arrived at the hospital after the shooting, McCraney informed her Petitioner shot him, Trial Tr. at pp. 133-34; (4) Rausheen Cox testified that a group of men, including McCraney, passed by Petitioner's residence, he and Petitioner followed the group, and Petitioner shot McCraney, Trial Tr. at pp. 314-21; and (5) Wayne Williams testified that Raheem Dunaway gave Petitioner a gun because Petitioner expressed a desire to shoot the individuals who had passed by his house on the afternoon of March 23, 2000, Trial Tr. at pp. 375-79.

The Court initially notes that defense counsel did not make any objections to the prosecutor's interrogation in the foregoing portions of the record, let alone on the ground that the questioning was leading. The Court has examined this testimony and finds that ADA Price did not engage in any improper questioning tactics. While the testimony cited by Petitioner clearly is unfavorable to him,

ADA Price did not utilize leading questions to procure it.  This Court finds that the prosecutor's questions did not have the capacity on their own to so infect the trial with unfairness as to make the resulting conviction a denial of due process.

### c.  Shifting Burden of Proof During Summation

Lastly, Petitioner charges that ADA Price attempted to shift the burden of proof during summation.  Am. Pet., Ground Three (citing Trial Tr. at p. 589).  This Court has reviewed the summations delivered by both counsel, and presumes Petitioner takes issue with the following statement made by ADA Price during summation: "Is there any proof at all that has been brought before you that anyone other than this defendant fired that gun at Larry McCraney?"  *See* Trial Tr. at p. 589.

To prevail on a claim of prosecutorial misconduct based on an allegedly improper summation, a petitioner must demonstrate that "he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (quoting *Bentley v. Scully*, 41 F.3d at 823); *see also Suriel v. Burge*, 2006 WL 2583203, at *6; *Ramirez v. Poole*, 2005 WL 1123775, at *9 (E.D.N.Y. May 9, 2005) (quoting *Bentley*).  Petitioner is correct in that a prosecutor is precluded from making comments which attempt to shift the state's burden of proof.  *See Floyd v. Meachum*, 907 F.2d at 353.  However, where the prosecution improperly suggests that a defendant has an obligation to present evidence in his favor at trial, such an error typically will be rendered harmless where the trial court's subsequent instructions to the jury make clear that the prosecution – and only the prosecution – bears the burden of proof in a criminal case.  *See United States v. Rivera*, 971 F.2d 876, 884 (2d Cir. 1992); *United States v. Walker*, 835 F.2d 983, 989 (2d Cir. 1987); *United States v. Cruz*, 797 F.2d 90, 93 n.1 (2d Cir. 1986); *see also Gary v. Conway*, 2006 WL 3290149, at *15-16 (N.D.N.Y. Nov. 13, 2006)

49

(Kahn, D.J.) (asserting that a jury instruction regarding burden of proof cured any improper statements that petitioner was required to submit proof at his criminal trial); *Lugo v. Kuhlmann*, 68 F. Supp. 2d 347, 369 (S.D.N.Y. 1999).

In the underlying criminal trial, defense counsel did not object to this aspect of the prosecutor's summation, and thus the trial court did not take any corrective action at the time of the prosecutor's statement.[26] However, the County Court instructed the jury as follows concerning the burden of proof:

> There is, of course, no duty upon the accused to call any witnesses since, as I have already explained to you, it's always incumbent upon the People to prove each and every essential element of the crime or crimes charged beyond a reasonable doubt, and this burden never shifts.

Trial Tr. at p. 599.

The County Court later emphasized the burden of proof as follows:

> Without a doubt, one of the most important safeguards in our law is the presumption of innocence, and it simply says that all persons charged with a crime and brought to trial are presumed to be innocent unless proven guilty beyond a reasonable doubt. And the law therefore presumes the accused to be innocent unless proven guilty beyond a reasonable doubt. Put another way, the accused is never required to prove anything.
>
> On the contrary, the People, having charged the accused of the crime or crimes charged, have the burden of proving the accused guilty beyond a reasonable doubt. The People have the burden of proving the accused guilty as to each and every essential element for conviction. The burden never shifts. It remains on the People, and the presumption of innocence with every accused from the beginning of the trial until such time when during final deliberations the jury may be convinced that the People have proved the accused guilty beyond a reasonable doubt.
>
> And, therefore, if in your minds during your final deliberations the People have not borne their burden of proof, and the presumption of innocence has not been overcome by proof which convinces you beyond a reasonable doubt, then of course you must find the accused not guilty.
>
> But if in your minds during your final deliberations you are satisfied from all of the

---

[26] Defense counsel's failure to object to the allegedly improper remark of the prosecutor "undermines the seriousness of petitioner's claim of error." *Rojas v. Senkowski*, 1996 WL 449321, at *4 (E.D.N.Y. July 29, 1996) (citation omitted).

> evidence that the People have borne the burden of proof, and the presumption of
> innocence has been overcome by evidence which convinces you beyond a reasonable
> doubt, then you must, of course, find the accused guilty.

Trial Tr. at p. 621-23.

In addition, when instructing the jury on the law concerning each crime in the indictment, the County

Court reiterated that "the People are required to prove from all of the evidence in this case beyond a

reasonable doubt" each element of the crimes charged. *See id.* at pp. 611-21. Even assuming,

*arguendo*, the prosecutor's statement regarding the burden of proof was improper, the above-described

jury charges rendered these comments harmless and cured any possible prejudice to Petitioner.

The Court concludes, even upon *de novo* review, that the prosecutor did not engage in

misconduct with respect to any of the instances cited in Williams' Amended Petition. Therefore, the

Court recommends that Petitioner's third ground for relief be denied. *See, e.g., Miranda v. Bennett*,

322 F.3d 171, 180 (2d Cir. 2003) (stating that claims alleging prosecutorial misconduct must be

assessed "in the context of the entire trial") (quotations omitted); *Fletcher v. Mann*, 956 F. Supp. 168,

174 (N.D.N.Y. 1997) (Scullin, D.J.), *aff'd*, 165 F.3d 13 (2d Cir. 1998) (denying *habeas* claim alleging

prosecutorial misconduct where any evidentiary error or misconduct allegation was "subsumed in what

was overall a fair and well-run trial").

### III.  CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Williams' Amended Petition for a Writ of *Habeas Corpus* (Dkt. No.

56) be **denied**; and it is further

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on the

parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of*

*Health and Human Servs.*), 892 F.2d 15 (2d Cir. 1989); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 72, 6(a) & 6(e).

Date:   June 22, 2007
          Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge